**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,

                Plaintiff,

vs.

SHORE FUNDING SOLUTIONS, INC.; and DOES 1 through 10, inclusive,

                Defendant.

Civil Case No.: 2:17-cv-06499-ADS-AKT

---

## MEMORANDUM OF LAW
## SUBMITTED IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

---

On the brief:

Ross H. Schmierer, Esq.
Tom Wheeler, Esq.

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………………ii-iii

STATEMENT OF FACTS…………………………………………………………….1

PROCEDURAL HISTORY……………………………………………………………2

DEFENDANT FAILS TO APPEAR AT DISCOVERY STATUS CONFERENCE……………3

ANOTHER COURT ORDER IS VIOLATED……………………………………………4

LEGAL ARGUMENT…………………………………………………………………4

     1.  The Requested Sanctions Are Permitted Under Fed. R. Civ. P. 16(f) and 37(b)……..4

     2.  This Court May Also Use Its Inherent Power to Impose the Requested Sanction……7

     3.  Legal Standard for Entry of Default Judgment pursuant to Rule 55(b)(2)……………8

     4.  Defendant Violated 47 U.S.C. § 227 by Robocalling Plaintiff Without Consent…….9

CONCLUSION………………………………………………………………………13

# **TABLE OF AUTHORITIES**

## **CASES**

**Page(s)**

*Agiwal v Mid Is. Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009)....................................5

*Alea London Ltd. v. Am. Home Servs., Inc.,* 638 F.3d 768, 776 (11th Cir. 2011)...................10

*Andrews v. NRM Extrusion*, 2007 WL 2344863 (W.D.N.Y. Aug. 15, 2007).........................9

*Badian v. Brandaid Commc'ns Corp.,* 2004 WL 1933573 (S.D.N.Y. Aug. 30, 2004)..............8

*Branham v. ISI Alarms, Inc.,* 2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013).......................10

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)........................................................7

*Charvat v. NMP, LLC 656 F.3d 440 (6th Cir. 2011)*..................................................11

*City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 129 (2d Cir. 2011).................9

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 935 F. Supp. 443, 448 (S.D.N.Y. 1996)...........8

*Galt v. Sealand Services, Inc.,* 1989 U.S. Dist. LEXIS 7018,
    1989 WL 69907, at *1 (N.D.N.Y. June 13, 1989)..............................................8

*Hall v. Flynn*, 829 F. Supp. 1401 (N.D.N.Y. 1993).......................................................8

*Hannabury v. Hilton Grand Vacations Co., LLC,* 174 F. Supp. 3d 768, 771 (W.D.N.Y. 2016)..10

*Hazel-Atlas Glass Co, v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)...........................7

*King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015)............................10

*Lediju v. New York City Department of Sanitation*, 173 F.R.D. 105 (S.D.N.Y. 1997)..............8

*Parise v. Riccelli Haulers, Inc.,* 672 F. Supp. 72, 74 (N.D.N.Y. 1987)...............................8

*Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 2009)........................................................5

*Simmons v. Charter Commc'ns*, Inc., 222 F. Supp. 3d 121, 130 (D. Conn. 2016), aff'd, 686 F.
App'x 48 (2d Cir. 2017)...............................................................................11

*Southern New England Tel. Co v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).........5,6

*Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995)…………………………….…....7

*Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994)………………………..5

In accordance with Magistrate Judge Tomlinson's directives, plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff") respectfully submits this Memorandum of Law in Support of its Motion for: (1) default under Fed. R. Civ. P. 37; and (2) entry of default judgment under Rule 55.

## STATEMENT OF FACTS

For the past several years, the defendant Shore Funding, Inc. ("Defendant") has continually harassed Plaintiff with unsolicited marketing of its financial services. *See* the Declaration of Fred Heidarpour ("Heidarpour Decl.") submitted herewith. Indeed, the Plaintiff settled two of these types of disputes with Defendant before filing the within lawsuit. Heidarpour Decl. at ¶ 14. These prior disputes involved the exact same conduct at issue herein, which ultimately ended in settlements at the end of 2015 and in January 2016. *Id.* While the terms of those agreements are confidential, Defendant has been repeatedly told by Plaintiff not to call it. *Id.* at ¶¶ 4, 9, 13, 14, 15, 17. Nevertheless, the Defendant *again* willfully refused to stop robocalling Plaintiff to solicit its services using an autodialer or prerecorded voice in clear violation of the Telephone Consumer Protection Act ("TCPA") and its do-not-call provisions. *Id.* at ¶¶ 16, 18. This time, Defendant began its harassing robocall campaign in June 2016. *Id.* at ¶ 2.

Specifically, starting on June 20, 2016, Plaintiff began receiving numerous robocalls on the cellular telephones ending in -3803, -1080, -1636, -7210, -6147, and -7511, which all belong to Plaintiff. *Id.* Defendant was seeking to solicit Plaintiff to purchase its business lending services. *Id.* Once again, however, Plaintiff had no prior business relationship with Defendant and had never given Defendant consent to call Plaintiff in any capacity. *Id.* at ¶¶ 3 & 11.

On July 11, 2016, after receiving an email from Defendant, Plaintiff responded and informed Defendant that Plaintiff did not want to be contacted further. *Id.* at ¶¶ 4, 13; Ex. A. Despite this, Defendant continued to call Plaintiff for two (2) years on Plaintiff's cellular

telephones, *even after this lawsuit was filed*. *Id.* at ¶¶ 5-9, Exs. B & F.  During the course of the calls from Defendant, Plaintiff maintained contemporaneous information pertaining to the number Defendant called from, the Abante number called, the date and time, the type of call (pre-record, autodialed, or live), and the contents of the conversations. *Id.* at ¶ 6, Ex. B.

Between June 20, 2016 and May 22, 2018, Defendant placed fifty three (53) calls to Plaintiff's cellular phones using either an automated telephone dialing system or a pre-recorded voice *Id.* at ¶¶ 6-9, Exs. B-F. Further, Plaintiff's cellular phones are registered on the National Do-Not-Call List such that each call soliciting its services also violated the (c)(5) provisions of the Telephone Consumer Protection Act. *Id.* at ¶¶ 12,16; Ex. G.  To make matters worse, Defendant's counsel exhibited extreme contumacious behavior in flouting this Court's Orders ultimately resulting in this application to the Court seeking to strike its Answer and enter a default judgment. For the reasons set out below, Plaintiff respectfully requests that the Court strike the Answer and enter an award of damages of $159,000 (or $53,000 for only negligent violations) based upon the substantial documentary and testimonial evidence submitted herewith demonstrating Defendant's willful and knowing violations of the TCPA.

## PROCEDURAL HISTORY

Plaintiff initiated this action for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by filing a Complaint with the Court on November 8, 2017.  *See* Doc. No. 1; the Declaration of Ross H. Schmierer ("Schmierer Decl.") at ¶5.  On January 10, 2018, the Honorable A. Kathleen Tomlinson held an Initial Conference wherein the Court set deadlines for discovery and dates for court appearances. *See* Schmierer Decl. at ¶7.

Following the Initial Conference, Plaintiff duly served Defendant with discovery demands in compliance with the Order in February 2018. *See* Schmierer Decl. at ¶8.  By contrast, Defendant

failed to comply with the Court's Order and did not serve any discovery. *See* Schmierer Decl. at ¶9. Even worse, Defendant failed to respond to any of Plaintiff's discovery demands. *See* Schmierer Decl. at ¶10.

While trying to obtain responses to our demands and even speak to attorney Clifford Olshaker ("Olshaker"), Defendant's counsel, we were simply ignored. *See* Schmierer Decl. at ¶10. Indeed, the undersigned counsel sent eight (8) separate emails to the email address that Defendant's counsel had used to send emails in the past and that is listed as his current email with the Court. In one of these emails, the undersigned even asked whether he was still representing the Defendant in this matter. Incredibly, counsel did not even respond to the same. Without a response to this email, the undersigned was forced to call his office to follow up. After putting me on hold to speak with Olshaker, his secretary advised that he would address my question on a call the next week. At the designated date and time, I called his office but nobody answered. *See* Schmierer Decl. at ¶10.

Despite the contumacious conduct of counsel, the undersigned opted not to file any type of motion so as not to run afoul of Magistrate Judge Tomlinson's Individual Practices and the Local Civil Rule 37.3(a). Because I was unable to speak with Olshaker on the phone, I opted not to file any motion because that would result in violating these rules. Instead, I deemed it more prudent to avoid wasting the Court's judicial resources with a motion and to address these issues with the Court at the Discovery Status Conference. *See* Docket No. 14.

### DEFENDANT FAILS TO APPEAR AT THE DISCOVERY STATUS CONFERENCE

On or about June 19, 2018, I drove two and a half hours to timely appear in person at the scheduled Discovery Status Conference set for 12 noon. *See* Schmierer Decl. at ¶12. Although the parties were made aware of this conference date and time, Olshaker failed to appear. *See*

Schmierer Decl. at ¶13. After waiting over an hour, we called Olshaker's office and obtained his cellular phone number. *See* Schmierer Decl. at ¶14. The Court clerk called Olshaker and Magistrate Judge Tomlinson permitted Olshaker to participate by phone. *See* Schmierer Decl. at ¶14. At that time, Olshaker claimed that he was having client issues and that he would most likely withdraw as counsel. *See* Schmierer Decl. at ¶15. Magistrate Judge Tomlinson instructed Olshaker to file a Motion to Withdraw on or before Monday, June 25, 2018. *See* Schmierer Decl. at ¶16. In addition, the Court also informed Attorney Olshaker that if the motion to be relieved is not filed on ECF by that next Monday, June 25, 2018, then it would permit plaintiff's counsel to move forward with a motion for relief under Rule 37 and Rule 55 for entry of default judgment. *See* Schmierer Decl. at ¶17. The Court memorialized these Rulings in an Order dated June 19, 2018. *See* Doc. No. 19.

**ANOTHER COURT ORDER IS VIOLATED**

Although the Court expressly instructed Olshaker to file his application by Monday, June 25, 2018 and So Ordered this directive in her rulings, Olshaker violated the Court's Order. As such, on June 27, 2018, the Court issued the following Text Order:

> In light of defense counsel's failure to comply with the Court's Order of June 19, 2018, the Court is permitting plaintiff's counsel to proceed with the filing of a formal motion for (1) default under Fed. R. Civ. P. 37 and (2) entry of default judgment under Rule 55. The motion papers and memorandum of law must be filed on ECF within 30 days. The motion is returnable before Judge Spatt.

**LEGAL ARGUMENT**

**1.  The Requested Sanctions Are Permitted Under Fed. R. Civ. P. 16(f) and 37(b)**

Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii) authorizes courts to impose a variety of sanctions – including "striking pleadings in whole or in part" and "rendering a default judgment against [a] disobedient party" – where a party has "fail[ed] to obey an order to provide or permit discovery."

4

Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii).  Likewise, Fed. R. Civ. P. 16(f) authorizes courts to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)," where a party or his attorney has "fail[ed] to appear at a scheduling or other pretrial conference" or has "fail[ed] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f).

While these rules provide for a range of sanctions, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 2009) (citations omitted). The imposition of severe sanctions is necessary to avoid a situation where courts "encourage dilatory tactics, and compliance with discovery orders . . . come[s] only when the backs of counsel and the litigants [are] against the wall." *Id.* (citation omitted).  Indeed, the availability of these severe sanctions is essential to the efficient functioning of the courts, especially if the Federal Rules of Civil Procedure are to achieve their stated goal of "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1; *see also Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994).

The Second Circuit has identified a number of non-exclusive factors that courts should consider in imposing sanctions under the Federal Rules, which include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v Mid Is. Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009).  Although these enumerated factors provide useful guidance, they are not exclusive. *Southern New England Tel. Co v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

No single factor controls, and it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned. *See Southern New England Tel. Co*, 624 F.3d at 144.

In the case at bar, the Plaintiff respectfully submits that each of the aforementioned factors supports striking the Defendant's Answer and rendering a default judgment against the Defendant. As set forth more fully above and in the accompanying Schmierer Decl., Defendant: (1) failed to propound any type of discovery in this matter in violation of the Court's Order; (ii) failed to comply with the Local Rules of this Court in not cooperating in the discovery process despite Plaintiff's continued diligent efforts to meet and confer; (iii) failed to respond to the duly served discovery demands in violation of the Court's Order; (iv) failed to appear for the Discovery Status Conference thereby violating the Court's Order; and (v) failed to comply with the Rulings at the Discovery Status Conference memorialized in another Court Order in which the Court explicitly also stated what the sanctions for noncompliance would be.  Defendant has no reason for such willful noncompliance.

In addition, Plaintiff respectfully submits that Defendant's unresponsiveness to counsel's repeated good faith requests to meet and confer and Defendant's repeated failure to comply with the Court's Orders and directives dictates that only striking the pleading would be an effective sanction.  Plaintiff submits that a monetary fine or other sanction short of striking the pleading would not inspire Defendant to proactively defend this litigation, especially given the demonstrable inefficacy of repeated warnings that its failure to move to withdraw would result in entering default.

Likewise, the duration of Defendant's refusal to obey court orders also weighs in favor of striking the pleading and entering default.  Defendant failed to serve requests for production of

documents and interrogatories by February 13, 2018 in violation of the Court's Order.  Defendant also failed to respond to the first request for production of documents and first request for interrogatories by March 27, 2018, also in violation of the Court Order.  Even assuming *arguendo* that it took time to gather responsive documentation, the Defendant surely could have put together responses to the interrogatories in this four-month period.

Finally, Defendant was *expressly warned* of the consequences of not complying with Judge Tomlinson's rulings at the Discovery Status Conference held on June 19th, a conference where counsel failed to even appear and was permitted to participate by phone after the Court *called him*. At that time, the Court put its rulings on the record and indeed, asked Defendant's counsel why it shouldn't enter a default against him and his client right then and there.  Generously, however, the Court gave Olshaker the chance to file a motion to withdraw and if he failed, she would permit the filing of this motion.  *See* Schmierer Decl. at ¶18; Doc. No. 19.  Incredibly, Olshaker flouted *another* Order and simply failed to adhere to his representations made to the Court at the conference that he would be filing such a motion by week's end.  Simply put, Defendant opted not to heed the Court's explicit warnings for such a violation of the Court's Order at its peril.   Thus, Plaintiff respectfully submits that the Court's explicit warnings are sufficient to justify the striking of Defendant's Answer and rendering a default judgment.

### 2.   This Court May Also Use Its Inherent Power to Impose the Requested Sanction

In addition to the sanctions authorized under the Federal Rules, federal courts have the inherent power to sanction a party for conduct that constitutes an abuse of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see also Hazel-Atlas Glass Co, v. Hartford-Empire Co*., 322 U.S. 238, 246 (1944) ("we find it surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process").

The Second Circuit has recognized that "[a] court has the inherent power to supervise and control its own proceedings and to sanction . . . a litigant for bad-faith conduct." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995).

This Court's inherent powers include the power to strike Defendant's pleadings for failure to obey court orders. *See, e.g., Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 935 F. Supp. 443, 448 (S.D.N.Y. 1996) ("under this court's inherent authority . . . the court [may in its discretion] . . . impose the particularly severe sanction of dismissal of a suit for improper litigation conduct" (quotation omitted)).  In the Second Circuit, courts have struck pleadings, or entered judgment against a party, in cases where the party's behavior adversely effected the judicial process. *See Lediju v. New York City Department of Sanitation*, 173 F.R.D. 105 (S.D.N.Y. 1997) (willful failure to obey pretrial scheduling orders); *Hall v. Flynn*, 829 F. Supp. 1401 (N.D.N.Y. 1993) (failure to appear at discovery conference); *Galt v. Sealand Services, Inc.*, 1989 U.S. Dist. LEXIS 7018, 1989 WL 69907, at *1 (N.D.N.Y. June 13, 1989) (failure to comply with court order to obtain new counsel within certain time period).

Here, the Plaintiff respectfully submits that the reasons supporting the imposition of the Rule 37 sanctions apply equally to justify the use of the Court's inherent power to strike Defendant's Answer for failure to obey the several court orders issued in this matter.

### 3.  Legal Standard for Entry of Default Judgment pursuant to Rule 55(b)(2)

The Federal Rule of Civil Procedure 55(b)(2) allows for entry of default judgment by the Court where defendant has failed to defend an action. *Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 74 (N.D.N.Y. 1987). A plaintiff does not receive default judgment as a matter of right; rather, a court has discretion as to whether it should be granted.  *Badian v. Brandaid Commc'ns Corp.*, 2004 WL 1933573 (S.D.N.Y. Aug. 30, 2004). "When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining

to liability." *Andrews v. NRM Extrusion*, 2007 WL 2344863 (W.D.N.Y. Aug. 15, 2007). Furthermore, under Rule 55(b)(2)(B) the court is empowered to determine the amount of damages. *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 129 (2d Cir. 2011).

In this case, the Plaintiff respectfully submits that entering a default judgment against the Defendant is appropriate. As demonstrated herein, the Defendant has done nothing to defend its interests in this case. Defendant has failed to propound any discovery demands whatsoever or participate in the discovery process at all. Instead, Defendant has exhibited extreme dilatory tactics and contumacious behavior. Even worse, Defendant has flat out ignored several Court Orders issued by Magistrate Judge Tomlinson. As set forth more fully below and in the accompanying Declarations submitted herewith, the Plaintiff's Complaint adequately states a claim against Defendant for its egregious violations of the TCPA. Accordingly, the Court should grant the Plaintiff's request for default judgment against the Defendant and award damages accordingly.

### 4.  Defendant Violated 47 U.S.C. § 227 by Robocalling Plaintiff Without Consent

The Telephone Consumer Protection Act, 47 U.S.C. § 227, bans automatic telephone calls or prerecorded messages to a cellular telephone. Section 227(b)(1)(A)(iii) of title 47 provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States … to make any call … using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

Further, regulations promulgated by the Federal Communications Commission under the TCPA further provide that "[n]o person may ... [i]nitiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice … [t]o any telephone number

assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii). The test is disjunctive, such that a violation occurs from either using an automatic telephone dialing system or an artificial or prerecorded voice. *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015) ("Its plain language applies to both pre-recorded voice messages and use of an ATDS; they are alternative theories of liability.") The TCPA is a strict liability statute, *Branham v. ISI Alarms, Inc.,* 2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) (citing *Alea London Ltd. v. Am. Home Servs., Inc.,* 638 F.3d 768, 776 (11th Cir. 2011)), and provides a private right of action for injunctive relief and/or monetary damages of $500.00 per violation. 47 U.S.C. § 227(b)(3). In the case of willful or knowing violations, courts have discretion to award treble damages. *Id.*

Aside from 47 U.S.C. § 227 (b)(2), however, the TCPA provides for completely separate liability under a completely separate portion of the TCPA, 47 U.S.C. § 227 (c)(5), which concerns the national do-not-call regulations as well as the internal do-not-call practices of a telemarketer. 47 U.S.C. § 227 (c) is further enabled by the regulations it permits to be established, 47 C.F.R. § 64.1200(c)-(e). "Under 47 U.S.C. § 227(c), parties cannot make more than one call within a twelve-month period to a number listed on a do-not-call registry provided for by the Federal Communications Commission." *Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768, 771 (W.D.N.Y. 2016) (citing 47 U.S.C. § 227(c)(5) and its enabling provision 47 C.F.R. § 64.1200(c)(2), 47 C.F.R. § 64.1200(e)). "Additionally, Section 64.1200(d) provides that: No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

10

*Simmons v. Charter Commc'ns*, Inc., 222 F. Supp. 3d 121, 130 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017).  Similar to the disjunctive autodialer or prerecorded voice test of § 227 (b)(2), § 227 (c) permits a disjunctive test for either National Do-Not-Call Violations or internal do-not-call violations.  *Id.* at 129, 131.  Also similar to the (b)(2) provision, 47 U.S.C. § 227 (c)(5) provides for five hundred dollars ($500.00) in damages per negligent violation and treble damages ($1,500.00) for willful and knowing violations.

Defendant has violated both § 64.1200(c) & (d) as it applies to its endless solicitation campaign it has waged against Plaintiff.  Plaintiff's phone numbers are registered on the National-Do-Not-Call list, such that any calls after the initial one are a violation of the (c) protections. Heidarpour Decl. at ¶ 12, Ex. G.  Further, Plaintiff has repeatedly asked Defendant not to call Plaintiff, even prior to the June 2016 calls, such that Defendant would need to have maintained an internal do-not-call list and placed Plaintiff on it.  *Id.* at ¶ 14.  Defendant clearly has not, because Defendant continued to call Plaintiff fifty-three (53) times for solicitation purposes.  *Id.* at ¶¶ 6-9, Exs. B-F.  Based on this, it is clear that Defendant has failed to comply with any provisions of the do-not-call provisions of the TCPA, 47 U.S.C. § 227(c), and thus not only negligent damages, but willful and wanton damages, are justified in the amount of $1,500.00 per call.  *Id.* at ¶¶ 16, 18.

Turning to the issue of damages for violations of both § 227 (b) and (c), the Sixth Circuit in its seminal *Charvat v. NMP, LLC* order concerning diversity jurisdiction specifically analyzed this issue.  656 F.3d 440 (6th Cir. 2011).  Noting that "the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both," the Court went on to further note that the different provisions targeted different harms, with "[s]ubsection (b) impos[ing] greater restrictions on automated telephone calls" and "[s]ubsection (c) . . . impos[ing] minimum procedures for maintaining a do-not-call list that apply to all call—

live or automated—initiated for telemarketing purposes . . . ." *Id.* at 448-49.  The Court concluded by finding that "a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call." *Id.* at 449.  Such scenario is the one exactly presented here.  Defendant placed calls to Plaintiff using an automatic telephone dialing system or prerecorded voice **and** also placed its calls to Plaintiff for telemarketing purposes by soliciting Plaintiff to purchase its lending services despite Plaintiff's registration on the National Do-Not-Call List as well as repeated requests to not be called, thus triggering Defendant's internal do-not-call list.  Defendant has placed fifty-three (53) calls that knowingly and willfully violate both § 227(b)(3) and § 227(c)(5) on each call, such that Defendant is subject to liability of up to $3,000.00 per call (or $1,000 per call if only negligent).

Here, Plaintiff respectfully submits that the Court should deem all well-pleaded allegations of fact as admitted. Furthermore, Defendant willfully and knowingly used an automatic telephone dialing system <u>and</u> prerecorded voice to place calls to Plaintiff's cellular phone.  Heidarpour Decl. at ¶¶ 6-7, 18, Ex. A.  Because Defendant had settled two previous identical disputes with Plaintiff, it was aware that it did not have any type of consent to contact Plaintiff. *Id.* at ¶ 14.  Nevertheless, Defendant *again* engaged in an abusive robocall campaign.  Over that time, Plaintiff continually requested that Defendant cease and desist. Incredibly, Defendant even robocalled Plaintiff **thirty-two times <u>after this lawsuit was filed</u>**.  Clearly, Defendant knowingly and willfully violated the TCPA permitting this Court to treble Plaintiff's damages. As such, Plaintiff is entitled to $1,500.00 for each willful and intentional call Defendant made beginning in June 2016 using an automated dialer or prerecorded voice, and <u>an additional</u> $1,500.00 for each willful and intentional call made

12

in violation of the do-not-call provisions of the TCPA.  As there are fifty-three (53) calls at issue, this totals $159,000 (or $53,000 for only negligent violations).

## CONCLUSION

Based on the foregoing, the Plaintiff respectfully requests that this Court striking the Defendant's Answer and render a default judgment against the Defendant.  Plaintiff further respectfully submits the within undisputed evidence establishes that Defendant used an automatic telephone dialing system or prerecorded voice to place calls to the Plaintiff's cellular telephones without consent and in direct violation of both the National and internal do-not-call regulations and thus violated two separate provisions of the TCPA.  Moreover, Defendant was keenly aware that Plaintiff did not want to be called as they had settled two prior disputes based on the same exact conduct at issue herein.  As such, the Plaintiff respectfully requests an award of statutory damages in either: (i) an amount of $53,000 comprised of $26,500 for the negligent (b) violations; and $26,500 for the negligent (c) violations; **OR** (ii) if the Court finds that the Defendant's conduct is willful $159,000 comprised of $79,500 for the intentional (b) violations and $79,500 for the intentional (c) violations.

Dated: New York, NY
      July 27, 2018

**DeNITTIS OSEFCHEN PRINCE, P.C.**

By: _____
      Ross H. Schmierer, Esq. (RS-7215)
      315 Madison Avenue, 3rd Floor
      New York, NY 10017
      (T):  (646) 979-3642
      (F):  (856) 797-9951
      rschmierer@denittislaw.com

**Law Offices of Todd M. Friedman, P.C.**
Todd M. Friedman, Esq.
(*Pro Hac Vice* Application Forthcoming)
21550 Oxnard St., Ste 780
Woodland Hills, CA 91367
Tel: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com

14