**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ABANTE ROOTER AND PLUMBING, INC.,
individually and on behalf of all others
similarly situated,

                                Plaintiff,

                -against-

SHORE FUNDING SOLUTIONS, INC., and
DOES 1 – 10,

                        Defendants.
------------------------------------------------------------X

                                                **REPORT AND**
                                        **RECOMMENDATION**

                                          CV 17-6499 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     PRELIMINARY STATEMENT

       This is an action alleging violations of the Telephone Consumer Protection Act, 47

U.S.C. § 227 *et seq*., ("TCPA") and its concomitant regulations. *See generally* Plaintiff's

Complaint ("Compl.") [DE 1]. Plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff") alleges

that over a period of several years, Defendant Shore Funding Solutions ("Defendant") repeatedly

called Plaintiff at several different telephone numbers to solicit Plaintiff to purchase its services

in violation of the TCPA. *See generally id.* Counsel for both parties appeared before the

undersigned on January 10, 2018 for the Initial Conference, at which time discovery deadlines

were set. *See* Initial Conference Minute Order [DE 10] and Case Management and Scheduling

Order [DE 11].

       Between counsels' appearance at the Initial Conference and the scheduled Discovery

Status Conference on June 19, 2018, there appears to have been a complete breakdown in

communication between counsel for the parties. Specifically, according to Plaintiff's counsel,

Defendant's counsel failed to respond to numerous communications and failed to serve or respond to any discovery demands. *See* Discovery Status Report[1] [DE 14]. Defendant's counsel then failed to appear at the Discovery Status Conference. *See* Discovery Status Conference Minute Order [DE 15]. At the conference, however, the Court was able to reach Defendant's counsel, Clifford Olshaker, Esq., by telephone. The Court addressed Mr. Olshaker's failure to comply with Defendant's discovery obligations and noted that this was not the first experience the Court had had with such conduct on his part. *See id*. Mr. Olshaker's only response was that he would be filing a motion to be relieved as counsel. *Id*. Upon learning this, the Court instructed him to file his motion to Judge Spatt promptly. The Court added that if the motion was not filed by June 25, 2018, Plaintiff's counsel would be permitted to proceed with a motion for default judgment under Federal Rules of Civil Procedure 37 and 55. *See id*.

Attorney Olshaker did not file the motion to withdraw by June 25. Consequently, on June 27, 2018, in response to a letter from Plaintiff's counsel [DE 16], this Court issued an Order permitting Plaintiff's counsel to file its motion for default under Rules 37 and 55. *See* Electronic Order dated June 27, 2018. Plaintiff's counsel filed the motion on July 27, 2018. *See* Plaintiff's Memorandum in Support of its Motion for Sanctions Under Rule 37(b)(2) and Default Judgment Under Rule 55 ("Pl.'s Mem.") [DE 17]. Judge Spatt granted Attorney Olshaker two extensions of time to respond to Plaintiff's motion. *See* Electronic Orders dated August 2, 2018 and August 22, 2018. Mr. Olshaker filed his opposition on August 29, 2018. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion ("Def.'s Opp'n.") [DE 20]. Plaintiff filed a

---

[1]   Defendant's counsel did not confer with Plaintiff's counsel to prepare the Discovery Status Report. Plaintiff's counsel provided examples of his attempts to reach Attorney Olshaker, including telephone calls and at least eight emails, to which Mr. Olshaker never responded. *See* DE 14.

reply memorandum on September 7, 2018. *See* Plaintiff's Memorandum in Reply ("Pl.'s Reply") [DE 23].

On October 5, 2018, Judge Spatt referred Plaintiff's motion for default judgment to this Court for a Report and Recommendation as to whether the motion should be granted. *See* DE 24. Having carefully considered the arguments of the parties as well as the applicable case law, this Court respectfully recommends to Judge Spatt that, for the reasons set forth below, Plaintiff's motion pursuant to Rule 37 and Rule 55 be DENIED. However, the Court respectfully recommends to Judge Spatt that a lesser sanction under Rule 37 be imposed on Defendant's counsel.

## II.   RELEVANT BACKGROUND

### A.   Procedural Background

Plaintiff filed its Complaint in this action on November 8, 2017, *see* DE 1, and Defendant filed its Answer on December 8, 2017. *See* DE 8. As noted above, the Court held the Initial Conference with both counsel in attendance on January 10, 2018. *See* DE 10. At that conference, the Court set a discovery schedule under which counsel were directed, among other things, to (i) serve their first requests for the production of documents and interrogatories by February 13, 2018; (ii) respond to opposing counsel's first requests for production of documents and interrogatories by March 27, 2018; and (iii) appear before the Court for the Discovery Status Conference on May 30, 2018 at 11:30 a.m. *See* DE 11. On May 29, 2018, the Court granted Plaintiff's motion to adjourn the Discovery Status Conference, *see* DE 12, which was rescheduled to June 7, 2018 at 12 p.m. *See* Electronic Order dated May 29, 2018. Plaintiff's counsel avers that Defendant's counsel did not respond to several attempted communications, and thus the motion to adjourn the conference was not jointly filed. *See* DE 12. On June 5,

2018, Plaintiff moved to adjourn the June 7, 2018 conference, *see* DE 13, and the Court granted

the motion.  The conference was rescheduled to June 19, 2018 at 12 p.m.  *See* Electronic Order

dated June 6, 2018.

On June 14, 2018, Plaintiff submitted the required Discovery Status Report in advance of

the June 19, 2018 Discovery Status Conference.  *See* DE 14.  In that report, Plaintiff's counsel

stated that he had served Defendant's counsel with initial discovery demands in February in

compliance with the Court's prior Order.  *Id*.  However, according to Plaintiff's counsel,

Defendant's counsel failed to serve any discovery demands.  *Id*.  Moreover, counsel stated that

Defendant's counsel had failed to provide any responses to Plaintiff's demands.  *Id*.  When eight

emails from Plaintiff's counsel generated no response, Plaintiff's counsel called the office and

spoke to Attorney Olshaker's secretary who put him on hold.  *Id*.  According to Plaintiff's

counsel, when the secretary picked up the line again, she told Plaintiff's counsel that "he

[Attorney Olshaker] would address [counsel's] question on a call [the] next week."  *Id*.  The

phone call which the secretary purportedly scheduled between the two attorneys went

unanswered by Defendant's counsel, along with several other calls.  *Id*.

The Court held the Discovery Status Conference as scheduled on June 19, 2018, at which

time Plaintiff's counsel appeared in person.[2]  *See* DE 15.  Defendant's counsel did not appear.

Rather, the Court was forced to call counsel on his mobile phone.  *Id*.  Upon reaching him,

Attorney Olshaker stated he did not know the case was on for a conference.  *Id*.  As to his failure

to serve or respond to discovery demands, Defendant's counsel stated that he had not received an

executed confidentiality agreement, implying that the absence of this agreement was the reason

---

[2]  Plaintiff's counsel informed the Court that he had driven 2.5 hours from Philadelphia
to attend the conference.

he had not responded to Plaintiff's discovery demands or served any himself – a response which the Court found lacking in credibility.  F.T.R. 12:45:00.  Defendant's counsel had no explanation as to why he did not respond to the myriad communications sent by Plaintiff's counsel.  *Id*. Rather, counsel stated that it was "overwhelmingly likely" that he would be filing a motion to be relieved as counsel for Defendant "before the end of the week."  F.T.R. 12:44:06.  The Court instructed Defendant's counsel that if his motion to be relieved as counsel was not filed by June 25, 2018, the Court would permit Plaintiff's counsel to move for a default judgment against Defendant.[3]  *See* DE 15.

On June 26, 2018, Plaintiff's counsel filed a letter stating that "[t]o date, [Defendant's counsel] has failed to make" a motion to be relieved as counsel, and "[a]s such, we intend to file our default motion shortly."  DE 16.  On June 27, 2018, the Court issued an Order permitting Plaintiff's counsel to file its motion for default judgment pursuant to Rules 37 and 55 within 30 days.  *See* Electronic Order dated June 27, 2018.  On July 27, 2018, Plaintiff filed its motion for default judgment.  *See* DE 17.  After receiving two extensions of time to respond, Defendant filed its opposition on August 29, 2018, *see* DE 20, and Plaintiff filed its reply on September 7, 2018.  *See* DE 23.  Judge Spatt referred Plaintiff's motion to this Court on October 5, 2018 for a Report and Recommendation as to whether the  motion should be granted.  *See* DE 24.

---

[3]   The Court also asked Defendant's counsel about a representation he made at the Initial Conference that he was going to make a motion to stay the case based on a matter pending in another jurisdiction.  F.T.R. 12:44:46.  The Court noted that notwithstanding this representation, no such motion was ever made.  *Id.*

### B.    The Arguments of the Parties

#### 1.    Plaintiff's Motion

Plaintiff's motion first addresses why sanctions under Rule 37 of the Federal Rules of Civil Procedure – specifically, striking Defendant's Answer and rendering a default judgment under Rule 37(b)(2)(A)(ii)-(vi) – are appropriate in this case.  As Plaintiff points out, Rule 37 "authorizes courts to impose a variety of sanctions – including 'striking pleadings in whole or in part' and 'rendering a default judgment against [a] disobedient party' – where a party has 'fail[ed] to obey an order to provide or permit discovery.'"  Pl.'s Mem. at 4.  Similarly, Plaintiff argues that Rule 16(f) "authorizes courts to 'issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii),' where a party or his attorney has 'failed to appear at a scheduling or other pretrial conference' or has 'fail[ed] to obey a scheduling or other pretrial order.'"  *Id*. at 5.  Identifying the non-exhaustive factors that courts consider in imposing sanctions under the Federal Rules – willfulness, efficacy of lesser sanctions, duration of noncompliance, and whether warnings were issued – Plaintiff contends that each factor "supports striking the Defendant's Answer and rendering a default judgment against the Defendant."  *Id.* at 6.

Plaintiff next asserts that it would be appropriate in this case for the Court to exercise its inherent powers to strike Defendant's Answer and issue a default judgment.  According to Plaintiff, Defendant's conduct in the instant action fits within the line of cases authorizing sanctions under a district court's inherent powers "for conduct that constitutes an abuse of the judicial process."  Pl.'s Mem. at 7.

As to Rule 55, Plaintiff states that Rule "55(b)(2) allows for entry of default judgment by the Court where defendant has failed to defend an action."  Pl.'s Mem. at 8.  Plaintiff contends that "[i]n this case . . . entering a default judgment against the Defendant is appropriate. . . . [T]he

Defendant has done nothing to defend its interest in this case.  Defendant has failed to propound any discovery demands whatsoever or participate in the discovery process at all." *Id* at 9. Assuming a default has been established, Plaintiff argues that, accepting its well-pleaded allegations as true, the Complaint establishes Defendant's liability under two provisions of the TCPA, 47 U.S.C. §§ 227(b)(2) and 227(c)(5).  *See id*. at 9-11.  Plaintiff asserts that it is entitled to statutory damages under the TCPA of $159,000.00 or, alternatively, $53,000.00.  *See id*. at 12-13.

### 2.   *Defendant's Opposition*

Defendant's opposition is based primarily on counsel's assertion that "discovery in this case was frozen by Plaintiff's counsel's refusal (or simple failure) to return Defendant's timely delivered Stipulation of Confidentiality/Protective Order [ ] until six weeks after discovery responses established by the Court's January 10, 2018 Scheduling Order were due."[4]  Def.'s Opp'n. at 3.  Counsel for Defendant states that he emailed Plaintiff's attorney the stipulation of confidentiality on February 21, 2018, but Plaintiff's counsel "utterly failed to return such Confidentiality Order or contact Defendant's attorney about it in any way until May 7, 2018, more than two months after the Court ordered deadline for discovery responses had passed." *Id*. at 4-5.

Defendant's opposition analyzes the individual factors which courts consider in determining whether sanctions are appropriate, and argues that such an analysis "do[es] not remotely satisfy the requirements established by the Second Circuit for the imposition of the

---

[4]  Defendant's opposition memorandum opens up with the assertion that "Abante and its owner Fred Heidarpour are serial plaintiffs that have filed over forty five cases in district courts across the country alleging violation of the [TCPA]," and they "have now set their sights on Shore Funding."  Def.'s Opp'n. at 3.

drastic remedy of default under Rule 37." Def.'s Opp'n. at 7. Specifically, as to willfulness, Defendant contends that the stipulation of confidentiality was a necessary prerequisite to producing discovery and Plaintiff's counsel failed to return it. According to Defendant's counsel, his "refusal to respond to Plaintiff's discovery requests without the Confidentiality Order in place cannot accurately be viewed as a willful regard of regard [*sic*] of the discovery process." *Id.* As to the efficacy of lesser sanctions, Defendant points out that "Plaintiff chose to bring this motion for Default without ever bringing a motion to compel. Whether Plaintiff hoped to side step the issue of its failure to return the Confidentiality Order or was simply in a hurry to secure a default judgment the fact remains that sanctions less severe than Default Judgment were never considered by the Court." *Id.* at 7-8. As to the duration of the period of noncompliance, Defendant argues that Plaintiff filed its motion only eight days after the June 19, 2018 conference, and although this was with permission of the Court, "[i]n no other reported case was default judgment entered under Rule 37 as a result of such a minimal delay." *Id.* at 8. Similarly, Defendant argues that Plaintiff has failed to show how it was prejudiced in any way by Defendant's conduct. *Id.* As to whether any warning was issued, Defendant argues that although this Court issued Defendant's counsel a stern warning at the Discovery Status Conference, the Court "was unaware that the primary reason [for] the lack of discovery exchange was due to Plaintiff's attorney failing to execute and return the Confidentiality Order." *Id.* at 9. Defendant also argues that, notwithstanding this Court's directives, counsel "was not mandated to withdraw as attorney for Shore Funding. After he and Defendant reached an agreement as to how to properly defend the case going forward Shore Funding was entitled to have him remain as their attorney." *Id.*

Defendant's counsel further contends that sanctions under Rule 16 of the Federal Rules of Civil Procedure for counsel's failure to appear at the Discovery Status Conference are also inappropriate.  To this point, Defendant's counsel states that his absence in person was caused by his failure "to properly sign up for email notifications when he filed an answer on behalf of Defendant," however, "[h]e was not wholly absent from the conference in that Judge Tomlinson permitted him to appear by telephone."  Def.'s Opp'n. at 10.  Defendant further asserts that the purported reason for Plaintiff's first motion to adjourn the Discovery Status Conference – a required appearance in the United States District Court for the District of New Jersey on the same date, *see* DE 12 – "was very likely misleading in that it misstated" the scheduling conflict that was the basis for the motion.  *Id*.  In support of this accusation, Defendant's counsel states that he has reviewed the docket in the District of New Jersey matter, and concludes that "there was no oral argument on May 30, 2018," as represented by Plaintiff's counsel; "it was, in fact, held the following day on May 31, 2018."  Declaration of Clifford Olshaker, Esq., attached to Def.'s Opp'n. ("Olshaker Decl.") [DE 20-1] ¶¶ 23-24.

With respect to sanctions pursuant to the Court's inherent authority, Defendant argues that exercising such powers requires a showing of bad faith, which has not been made in the instant action.  Def.'s Opp'n. at 11.  Finally, Defendant argues that Plaintiff has misstated the strength of its case, and "Defendant has a very strong defense to this case should it be decided on the merits."  *Id*. at 12.

### 3. *Plaintiff's Reply*

In his reply memorandum, Plaintiff's counsel stresses what he sees as counsel for Defendant's flagrant disregard of every communication Plaintiff's counsel attempted to make. *See generally*  Pl.'s Reply.  As to the argument raised by Defendant's counsel that he was not

obliged to withdraw his representation, Plaintiff points out that counsel did not have the courtesy to notify the Court or Plaintiff's counsel that he would *not* be filing a motion to withdraw as counsel. *See id*. at 2. Plaintiff also directly attacks the assertion made by Defendant's counsel that his noncompliance with discovery directives was based solely on the absence of a confidentiality agreement. Even assuming Plaintiff's counsel had not reached out to Defendant's counsel prior to May 7, 2018 regarding the confidentiality agreement – which Plaintiff's counsel states he did, multiple times – Plaintiff argues that the confidentiality agreement was executed on May 7, 2018, and Defendant's counsel still had not responded to discovery requests as of the filing of the reply memorandum on September 7, 2017 – some four months later. *See id.* at 3-4. Plaintiff further contends that the conduct of Defendant's counsel in this case is consistent with his abuse of the judicial process in other cases. *See id*. at 8-12.

As to the accusation that Plaintiff's counsel misrepresented his appearance in the District of New Jersey so as to unnecessarily adjourn the Discovery Status Conference, Plaintiff calls this an "unfounded cheap shot," and states that the date mix-up was "an inadvertent error . . . this simple law office failure was not motivated by any ill intent or bad faith." *Id*. at 4.

## III.  DISCUSSION

### A.  Federal Rule of Civil Procedure 37

#### 1.  *Legal Principles*

The subsection of Rule 37 of the Federal Rules of Civil Procedure that is relevant to the instant motion provides as follows:

(2) *Sanctions Sought in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or

37(a), the court where the action is pending may issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*       *       *

> (C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2).  As the language of the rule itself makes clear, Rule 37 provides a district court with a wide range of sanctions which it may apply to a wide range of circumstances -- potential sanctions extend from payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment on the other.  *See generally* FED. R. CIV. P. 37; *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) ("We have noted that district courts possess 'wide discretion' in imposing sanctions under Rule 37.") (quoting *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir. 1991)).

11

As the Second Circuit has stated,

> [d]isciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988).  In effectuating these purposes and determining whether and which sanctions under Rule 37 are appropriate, courts consider several well-known, non-exhaustive factors.  "These include: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'"  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (quoting *Nieves v. City of New York,* 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).

Notwithstanding the wide discretion a district court has in imposing sanctions, and in light of the factors noted above, the Court is mindful that it is only in the most extreme cases that a sanction of default judgment (in the case of a defendant's misconduct) or dismissal of the action (in the case of a plaintiff's misconduct) will be appropriate.  *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450-51 (2d Cir. 2013) ("Certain Rule 37 remedies—dismissing a complaint or entering judgment against a defendant—are severe sanctions, but they may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party.") (quoting *Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir. 1990)); *Shcherbakovskiy*, 490 F.3d at 140 ("[T]he sanction of dismissal 'is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration

of alternative, less drastic sanctions.'") (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).  "The essential reason for this 'traditional reluctance . . . is the policy of the law favoring the disposition of cases on their merits.'" *Richardson v. City of Niagara Falls, N.Y.*, No. 09-CV-824, 2011 WL 334322, at *3 (W.D.N.Y. Jan. 31, 2011) (quoting *Affanato v. Merrill Bros.,* 547 F.2d 138, 140 (1st Cir. 1977)); *Hollingsworth v. City of New York,* 1997 WL 91286, at *3 (S.D.N.Y. Mar.4, 1997) (explaining that courts considering dismissal as a discovery sanction should keep in mind "strong policy favoring disposition of claims on their merits").

### 2.   *Application to the Facts*

Having considered the arguments of both sides and examined the applicable law, the Court concludes that a default judgment as a sanction under Rule 37 would not be appropriate in the instant circumstances.  However, since the conduct of Defendant's counsel has been, among other things, disdainful and inappropriate towards the Court and opposing counsel, and in the absence of any justification for such conduct, it is clear to the Court that some form of sanction under Rule 37 is appropriate.

The Court's consideration of the motion for default judgment under Rule 37, like any motion for Rule 37 sanctions, centers on the several factors noted above – willfulness, the efficacy of lesser sanctions, the duration of the period of noncompliance, and whether the noncompliant party was warned of potential consequences of noncompliance.  The Court begins with willfulness.  Given the number of communications sent by Plaintiff's counsel to which Defendant's counsel utterly failed to respond – eight emails and several telephone calls – the Court fails to see how the conduct of Defendant's counsel could be considered anything but willful.  The argument of Defendant's counsel that failure to produce discovery was not

altogether "willful" because the stipulation of confidentiality had not been executed is

disingenuous at best.  Further, the purported justification is undermined by the multiple attempts

made by Plaintiff's counsel to communicate with Defendant's counsel.  The root cause of the

delay in executing the stipulation of confidentiality was the failure of Defendant's counsel to

meet his obligations under Local Rule 37.3 to confer in good faith to resolve discovery issues.

Defendant's counsel unilaterally decided not to engage in discovery, thereby ignoring the

Court's Orders.  The Court draws counsel's attention to directives issued at the Initial

Conference, particularly ¶ 10 of the January 10, 2018 Civil Conference Minute Order, which

discusses what counsel must do if he/she is not going to meet a deadline for good cause shown:

> Under existing Second Circuit case law, any amendments or
> modifications to this Order or to the accompanying CMSO must be
> approved in advance by the Court.  Therefore, the parties are not
> free to grant each other extensions of any deadlines set forth in these
> Orders.  Nor is any party free to ignore a deadline and not bring that
> information to the attention of the Court in a timely manner.  **All
> requests for extensions or modifications of any deadlines stated
> in these Orders must be made by letter motion to the Court at
> least 48 hours in advance of the expiration of the deadline, unless
> otherwise directed by the Court.**  The parties are directed to my
> Individual Practice Rules for further information.

Initial Conference Minute Order ¶ 10 (emphasis in original).  Defendant's counsel nonetheless

took it upon himself to ignore the directive *not* to ignore deadlines.

Defendant's counsel also asserts that his absence at the Discovery Status Conference was

not "willful" because, when filing his Answer in December 2017, he failed to register for ECF

electronic notifications.  *See* Olshaker Decl. ¶ 18.  That contention is similarly undermined.  The

Court points out that Attorney Olshaker is attorney of record in at least 11 cases filed in the

Eastern District of New York, starting in November 2009 and continuing to today, with six cases

currently pending.  *See* CM/ECF.  His excuse that he just forgot to file for ECF notification in

this case lacks credibility.  Counsel was clearly aware of the Initial Conference, notwithstanding any alleged absence of ECF notifications, because he actually attended the conference. However, even assuming *arguendo* that Defendant's counsel was not receiving electronic docket notifications, his complete lack of attention to the status of this case -- and failure to communicate with opposing counsel for five months -- raises serious questions about the manner in which he elected to handle his professional responsibilities.  Indeed, even in the absence of electronic docket notifications, simply returning opposing counsel's numerous communications would likely have resolved the matter expeditiously.

As to the efficacy of lesser sanctions, the Court is cognizant that no motion to compel or motion for lesser sanctions was filed by Plaintiff's counsel prior to the motion for default. Owing to the unique circumstances of this case, the lack of a motion for some other form of relief prior to moving for a default judgment does not relieve Defendant's counsel of his obligations.  As the record shows, Defendant's counsel made a representation to the Court on the record that he was "overwhelmingly likely" to make a motion to be relieved as counsel in the near future.  Given counsel for Defendant's track record of non-compliance with Court Orders and with discovery obligations, the Court set a deadline for counsel to make the motion so that the case could proceed one way or the other.  The Court never directed or ordered Defendant's counsel to withdraw from his client's representation.  Rather, the Court gave Plaintiff's counsel permission to move if Defendant's motion was not timely filed.

However, the Court must also consider the assertions of Defendant's counsel that he has resolved whatever issues existed between him and his client.  Counsel has no obligation to

withdraw from the case, nor did he ever have such an obligation.[5]  In short, while it was perfectly proper for Plaintiff's counsel to file the instant motion for default judgment in light of the directives issued by the Court, the fact remains that no lesser sanctions have yet been imposed.  Nor can this Court state with any certainty that lesser sanctions would not lead to compliance.

As to the period of noncompliant conduct, the noncompliance of Defendant's counsel lasted, at a minimum, approximately five months – from immediately following the Initial Conference on January 10, 2018, to his non-appearance at the Discovery Status Conference on June 19, 2018.  During these five months, Defendant's counsel effectively failed to participate in the case in any meaningful way.  While five months is not a short period of time, the Court has seen cases that have stretched for far longer periods of time without meaningful participation by a party's attorney and without the penalty of default.

The Court must also consider whether Defendant's counsel had been warned of the consequences of continuing such non-compliant conduct.  At the June 19, 2018 Discovery Status Conference, Defendant's counsel was warned in the clearest terms that his failure to file a timely motion to withdraw as counsel – a motion which appeared to be the next step in the litigation based on Attorney Olshaker's representations – would result in further action of the Court.  Counsel argues that his client had a right to keep him on as counsel, and he therefore was not obliged to withdraw, notwithstanding his representation that he would do so.  Counsel misses the point.  The Court did not, nor was it attempting to *force* Attorney Olshaker to withdraw.  On that

---

[5]   The Court nonetheless finds that at a minimum, Defendant's counsel could have, and should have, notified the Court that contrary to his prior representations he was not withdrawing from the case.  This modicum of courtesy would likely have obviated the need for the instant motion.

point, the record is clear.  In the Court's view, by deciding to remain counsel of record without notifying the Court, the conduct of Defendant's counsel was, despite being warned of the consequences, a continuation of his previous unacceptable conduct.

From the above consideration of "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance," *Agiwal*, 555 F.3d at 302-03, the Court concludes that, at a minimum, factors (1) and (4) strongly favor the imposition of sanctions on Defendant's counsel.  However, these factors are not exhaustive, *see S. New England Tel. Co. v. Glob. NAPs Inc*., 624 F.3d 123, 148 (2d Cir. 2010), and the Court finds it appropriate to also consider what if any prejudice Plaintiff suffered as a result of the conduct of Defendant's counsel.  While the absence of prejudice to the moving party is not dispositive of a Rule 37 motion, *see id.* at 148  ("[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions that [Defendant] would have us apply."), prejudice can indeed be a relevant factor in determining whether Rule 37 sanctions are appropriate.  *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (finding the district court did not abuse its discretion in precluding admission of belatedly disclosed evidence where, among other things, "[t]he prejudice to the defendants in having to prepare for th[e] evidence would have been severe").  Here, Plaintiff has suffered some prejudice at the hands of Defendant's counsel.  Beyond delaying a final disposition of this matter, Plaintiff has incurred unnecessary expenses based on (1) defense counsel's general lack of responsiveness in failing to communicate with Plaintiff's counsel; (2) defense counsel's failure to appear in Court for a conference and the concomitant billing and transportation expenses; and (3) Plaintiff's having to file the instant motion.

17

However, the Court finds that a tailored sanction which compensates Plaintiff for the improper conduct of Defendant's counsel while also respecting the law's strong preference for adjudication on the merits properly balances the interests here.  *See Richardson*, 2011 WL 334322, at *3.

For the foregoing reasons, the Court does not find the entry of default judgment to be a proper Rule 37 sanction in these circumstances.[6]  Rather, the Court respectfully recommends to Judge Spatt that a sanction be imposed upon Defendant's counsel in the form of reimbursement of fees expended and costs incurred as a result of the filing of the instant motion by Plaintiff's counsel.

### B.    Federal Rule of Civil Procedure 55 and the Court's Inherent Authority

The other two bases for Plaintiff's motion for entry of default judgment are (1) Rule 55 of the Federal Rules of Civil Procedure and (2) the Court's inherent authority.  Plaintiff contends that each of these sources of authority properly authorizes the Court to enter a default judgment under the circumstances of this case.  *See* Pl.'s Mem. at 7-8.

"Under Rule 55, a party defaults when he 'has failed to plead or otherwise defend' the case at hand."  *Guggenheim Capital, LLC*, 722 F.3d at 454 (quoting FED. R. CIV. P. 55(a)).  The Second Circuit "ha[s] embraced a broad understanding of the phrase 'otherwise defend.'"  *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011); *Au Bon Pain Corp. v.*

---

[6]   The Court is also wary of subjecting the client to the extreme sanction of default – which, according to Defendant's counsel, has the potential to "cause the immediate insolvency of Shore Funding and loss of employment for its sixty employees," Def.'s Opp'n. at 3 – for counsel's unacceptable conduct.  "[T]he court must proceed 'with the greatest reluctance . . . [to] visit upon the client the sins of counsel, absent [the] client's knowledge, condonation, compliance, or causation.'"  *Richardson v. City of Niagara Falls, N.Y.*, No. 09-CV-824, 2011 WL 334322, at *3 (W.D.N.Y. Jan. 31, 2011) (quoting *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d. Cir. 1979) (Oakes, C.J., concurring)).

*Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("We agree that Kahn's actions failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial were sufficient to support a finding that he had 'failed to plead or otherwise defend' under Federal Rule of Civil Procedure 55.").  In the Court's view, the conduct of Defendant's counsel, while worthy of the Rule 37 sanction described above, has not risen to a level constituting a failure to defend.  The Court reaches this conclusion in large part because in the instant action,[7] the Court has had only one opportunity to warn counsel that his conduct risked subjecting his client to the prospect of default, which it did at the June 19, 2018 Discovery Status Conference.  Moreover, Defendant's counsel did file a responsive pleading at the outset of the litigation and did appear at the Initial Conference.  Accordingly, although sanctions are appropriate, the Court does not recommend entry of a default judgment under Rule 55 at this time.

"In addition to the sanctions authorized under the Federal Rules, federal courts have the inherent power to sanction a party for conduct that constitutes an abuse of the judicial process." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 122 (S.D.N.Y. 2015) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991)).  As the Second Circuit has stated, "[a] court has the inherent power to supervise and control its own proceedings and to sanction . . . a litigant for bad-faith conduct." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir. 1995).   Under certain circumstances, this authority can extend to striking a pleading and entering a default judgment.  *See Fonar Corp. v. Magnetic Resonance Plus, Inc.,* 935 F.Supp. 443, 448 (S.D.N.Y.1996).  "However, the court must use "restraint and discretion" when ordering sanctions against a party pursuant to its

---

  [7]   At the Discovery Status Conference, the Court observed that this was not the first case in which Defendant's counsel has exhibited this type of behavior.

inherent powers, because the court exercises its inherent powers free from legislative oversight."
*Walpert v. Jaffrey*, 127 F. Supp. 3d at 122.

The Court does not find a need to resort to its inherent authority where Rule 37 provides sufficient authority.  Moreover, the Court does not find that the requisite showing of "bad-faith conduct" – which would be necessary to exercise the Court's inherent authority to strike a pleading and enter a default judgment – is satisfied under the existing circumstances of this case.  This conclusion is consistent with the Court's unwillingness to recommend entry of default judgment under Rule 37, which under most circumstances would require the same bad faith showing.  *See Guggenheim Capital*, 722 F.3d at 450-51.

IV.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Spatt that Plaintiff's motion for entry of default judgment pursuant to Federal Rules of Civil Procedure 37 and 55 be DENIED.  However, the Court recommends that the Court impose a lesser sanction under Rule 37, specifically, that Defendant's counsel be required to reimburse Plaintiff's counsel for the total amount of fees expended and costs incurred as a result of the filing of the instant motion.

V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Hon. Arthur D. Spatt and to the Chambers of Judge A. Kathleen Tomlinson.  Any requests for an extension of time for filing objections must be**

20

**directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing**

**objections**.  Failure to file objections will result in a waiver of those objections for purposes of

appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.

1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.

1996).

<strong>SO ORDERED</strong>.

Dated: Central Islip, New York
      March 6, 2019

                              /s/ A. Kathleen Tomlinson
                              A. KATHLEEN TOMLINSON
                              U.S. Magistrate Judge